BUTINE v. STEVENS.

1. AUTOMOBILES—SLEEP—WILFUL AND WANTON MISCONDUCT—GUEST PASSENGERS.

Under the guest passenger act, motorist who is overcome by sleep is not guilty of wilful and wanton misconduct unless it appears that he continued to drive in reckless disregard of premonitory symptoms (1 Comp. Laws 1929, § 4648).

2. SAME—CONTINUANCE OF MISCONDUCT BY DEFENDANT—QUESTION OF FACT.

In order to impose liability under the guest act, there must be at least a question of fact as to whether or not there was a continued persistency in defendant's course of misconduct after ample warning, or after it became apparent that continuance of such misconduct would result in injury to defendant's guests (1 Comp. Laws 1929, § 4648).

3. SAME—GUEST ACT—WILFUL AND WANTON MISCONDUCT.

In action under guest act liability is not imposed, where evidence fails to show that defendant was guilty of that deliberate recklessness which differentiates ordinary actionable negligence from "gross negligence or wilful and wanton misconduct" in that it does not appear that plaintiff guest, who had fallen asleep herself, had protested defendant's action in driving the car (1 Comp. Laws 1929, § 4648).

Appeal from Kalamazoo; Weimer (Geo. V.), J. Submitted June 4, 1947. (Docket No. 29, Calendar No. 43,749.) Decided October 13, 1947.

Case by Irene Butine, by next friend, against Lloyd Stevens and another for personal injuries sustained when automobile in which she was riding turned over. Verdict for plaintiff. Judgment for

Definition of wilful and wanton misconduct, see 2 Restatement, Torts, § 500; question of intent and knowledge of risk, see § 500, comments e, f and g.

defendants *non obstante veredicto* for plaintiff.
Plaintiff appeals.   Affirmed.

*Schaberg & Schaberg,* for plaintiff.

*Jackson, Fitzgerald, Dalm, Nims, Sage & Wheeler,*
for defendants.

BUTZEL, J.   Plaintiff, a minor, by her next friend,
sued to recover damages for personal injuries sus-
tained by her while riding as a guest passenger
in an automobile owned by defendant Stevens and
operated with the latter's consent by defendant
Kosminske.   The trial court reserved decision on
motions for directed verdict.   The jury returned a
verdict of $3,750 for plaintiff.   On motion, the trial
court entered judgment for defendants notwith-
standing the verdict.   Plaintiff appeals.

Prior to the accident, plaintiff had been in South
Haven, Michigan, for several days attending a
house party.   On July 3, 1946, defendant Kosminske
and his fiancee, the daughter of defendant Stevens
(now Mrs. Kosminske), drove from Kalamazoo to
South Haven in Stevens' 1941 four-door Chevrolet
sedan to attend the party.   They arrived at the cot-
tage where plaintiff was staying at approximately
10:30 p. m.  Kosminske testified that he had two
drinks during the evening.   Plaintiff testified that
none of the party was intoxicated.   Shortly after
midnight, Kosminske and Miss Stevens, with plain-
tiff as a guest passenger, started to return to Kala-
mazoo, a distance of approximately 41 miles.   All
three sat in the front seat with Kosminske at the
wheel, plaintiff on the outside and Miss Stevens in
the middle.   They were in high spirits and were
singing.   After proceeding about five miles, Miss
Stevens fell asleep.   Sometime later plaintiff fell

asleep. Defendant Kosminske continued to drive until he fell asleep at the wheel and as a result the car left the road and turned over. Plaintiff was thrown out of the car and seriously injured.

The sole question presented on appeal is, does the testimony, viewed in the light most favorable to plaintiff, present an issue of fact for jury determination as to whether or not defendant Kosminske was guilty of "gross negligence or wilful and wanton misconduct" within the meaning of the guest passenger statute (1 Comp. Laws 1929, § 4648 [Stat. Ann. § 9.1446]).

This Court has held in a long line of cases that the driver of an automobile, overcome with sleep, is not guilty of gross negligence or wilful and wanton misconduct unless he continues to drive in reckless disregard of premonitory symptoms. *Nasser* v. *Kalush,* 298 Mich. 133; *Wismer* v. *Marx,* 289 Mich. 38 (7 N. C. C. A. [N. S.] 624); *Perkins* v. *Roberts,* 272 Mich. 545; *Boos* v. *Sauer,* 266 Mich. 230. Plaintiff contends that defendant Kosminske had premonitory symptoms of sleep, but disregarded them and continued to drive with his two sleeping passengers; that he subsequently fell asleep with the resultant accident and injuries to plaintiff. Kosminske denied that he had experienced any premonitory symptoms prior to falling asleep at the wheel. He testified as follows:

"*Q.* Miss Butine stayed awake and you and she sang a while. How far from South Haven would it be before she fell asleep?

"*A.* Maybe just a little more than a third of the way out.

"*Q.* After she had fallen asleep you had been driving for some little time alone?

"*A.* Yes, sir. I can't remember ever having fallen asleep before while driving. In the army, I

did all night driving. My record has been good. I never had any accidents. I never smashed any automobiles up. I don't think I ever nodded off while driving.

"*Q.* On this evening, or getting along now to the morning of July 4th, at about 1:30, did you fall asleep then?

"*A.* That is when I left the road, when I fell asleep.

"*Q.* You tell the court and jury what happened at that instant.

"*A.* Well, it all happened in a matter of a second, it seemed to me, and when I woke up, that was from shock of hitting the side of the road. I saw the ditch and the car tipped over.

"*Q.* And you were awake before the car had gone into the—overturned?

"*A.* Before the car turned over.

"*Q.* Had you nodded off before that?

"*A.* No, I hadn't.

"*Q.* Had you felt sleepy before you fell asleep?

"*A.* No, I hadn't.

"*Q.* How did you feel?

"*A.* I felt pretty good.

"*Q.* Did you have any reason to believe that you were going to fall asleep?

"*A.* No, I didn't.

"*Q.* Did you believe that you could continue on to Kalamazoo all right?

"*A.* Yes, I did.

"*Q.* Did you feel that you were able to drive the car properly?

"*A.* Yes, I did.

"*Q.* Did you have any premonitory signs of sleepiness?

"*A.* No, I didn't."

Plaintiff testified in part:

"*Q.* Did you have any talk concerning the accident?

"*A.* Just 'one time that I can remember of anything.

"*Q.* What was said at that time?

"*A.* Well, I asked him how it happened and what had happened, and he told me that he had fallen asleep at the wheel and that I was thrown out of the car, and he said that he knew that he was getting sleepy; that is, he felt it coming on, but he didn't want to wake Norma and myself up and thought that he could make it on into town."

Plaintiff's father testified on cross-examination as follows:

"*Q.* I believe you testified, Mr. Butine, that Mr. Kosminske came in with the officer?

"*A.* Yes.

"*Q.* On the night of July 4th, is that right?

"*A.* That is right.

"*Q.* And he told you what had happened?

"*A.* Yes, sir.

"*Q.* And he was very sorry, and he said to you that the first thing he knew, he left the road, is that right?

"*A.* Yes.

"*Q.* Did he not also say that if he knew he was going to fall asleep, he would wake up his girl friend, Norma Stevens?

"*A.* He felt himself getting sleepy; that he intended to wake them up."

*Manser* v. *Eder,* 263 Mich. 107, and *Malicote* v. *DeBondt,* 281 Mich. 650, are the two cases in this jurisdiction in which recovery was allowed a guest passenger for personal injuries sustained when the defendant fell asleep at the wheel of an automobile. In both of those cases the defendant had been aroused from his sleep and informed of a narrow escape similar to that which eventually occurred and plaintiff asked that the automobile be stopped to permit plaintiff to get out, which request was

refused. As stated by Mr. Justice NORTH in *Rowe*
v. *Vander Kolk,* 278 Mich. 564, 570:

"A characteristic element in many, if not all, of
the cases in which this Court has held a question of
fact was presented under the guest act is that there
was continued persistency in defendant's course
of misconduct after ample warning, or after it be-
came apparent that continuance of such miscon-
duct would result in injury to the defendant's
guests."

The element of deliberate recklessness which dif-
ferentiates ordinary actionable negligence from
"gross negligence or wilful and wanton miscon-
duct" is not to be found in the case at bar. Simi-
larly, in *Wismer* v. *Marx, supra,* it was the lack of
recklessness in defendant's behavior which led this
Court to reverse a judgment on the verdict for
plaintiff without a new trial, notwithstanding that
defendant had fallen asleep previous to the acci-
dent and was aroused by plaintiff. Writing for the
Court in that case, Mr. Justice WIEST observed:

"Judging from the driver's expressed state of
mind relative to his ability to continue to drive and
plaintiff's acquiescence therein it cannot be found
that his further driving constituted a conscious and
reckless disregard of consequences to plaintiff. The
case stands apart from instances where danger was
recognized by a guest, called to the attention of the
driver, protest made, request for discontinuance or
right to leave the vehicle refused, and the antici-
pated result by reason of the continued recklessness
of the driver has been realized, and a wilful and
wanton disregard of consequences can be found."

To establish "gross negligence or wilful and
wanton misconduct" under the circumstances of
this case, it is necessary that plaintiff show that de-
fendant continued to drive in *reckless* disregard of

premonitory symptoms.   This plaintiff failed to do. The testimony in the instant case did not present an issue of fact for jury determination, as to whether or not defendant Kosminske was guilty of gross negligence or wilful and wanton misconduct.

Judgment entered in the circuit court is affirmed, with costs to appellees.

CARR, C. J., and BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.