153 N.J. Super. 109 (1977)
379 A.2d 263
STEPHEN CARNEY AND DOLORES CARNEY, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
GORDON AND WILSON COMPANY, DANELLA BROTHERS, MICHAEL N. MAGUIRE AND WILLIE L. RICHMOND, INDIVIDUALLY, JOINTLY, OR IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1977.
Decided October 4, 1977.
*110 Before Judges BISCHOFF, KOLE and GAULKIN.
Mr. Frederick R. Grayer argued the cause for appellants (Messrs. Kent, Grayer & Rosenberg, attorneys).
Mr. Robert J. Partlow argued the cause for respondents (Messrs. Parker, McCay and Criscuolo, attorneys).
The opinion of the court was delivered by GAULKIN, J.S.C., Temporarily Assigned.
Plaintiffs Stephen Carney and Dolores Carney, his wife, appeal from a judgment of no cause for action entered against them in this personal injury negligence action. Their principal contention here is that the trial judge erred in refusing to permit the jury to consider whether the acts of defendants Gordon and Wilson Company and Michael N. Maguire constituted "wanton and willful misconduct."
While driving a tractor on the New Jersey Turnpike on July 20, 1973, Stephen Carney was involved in a five-vehicle accident which occurred after a truck owned by Gordon and Wilson Company and driven by Maguire became disabled and came to a halt in the center lane of the southbound roadway of the Turnpike. Two lawsuits, subsequently consolidated, *111 were filed, asserting claims on behalf of and against the drivers and owners of the various vehicles. On the liability phase of the bifurcated trial the jury returned its verdict by special interrogatories which included findings that Gordon and Wilson Company and Maguire were negligent and that Carney was contributorily negligent. The trial court accordingly entered a judgment of no cause for action against plaintiffs.
The principal theory of liability against Gordon and Wilson Company and Maguire was that they had negligently failed to inspect and maintain the Gordon and Wilson truck and that they permitted and caused it to be driven while in disrepair, resulting in its becoming disabled and precipitating the accident. Plaintiffs further contended that those omissions and actions could be found by the jury to constitute "willful and wanton misconduct." The trial judge, however, found that "there was not sufficient evidence introduced at this trial for the jury to decide the question of whether it was willful or wanton * * *." Plaintiffs assert that ruling was error which prejudiced them inasmuch as a jury finding of willful and wanton conduct would deprive defendants of the contributory negligence defense. See Burd v. Vercruyssen, 142 N.J. Super. 344, 353 (App. Div.), certif. den. 72 N.J. 459 (1976).
Giving plaintiffs the benefit of all favorable inferences (Dolson v. Anastasia, 55 N.J. 2 (1969)), the proofs here would permit findings that the Gordon and Wilson truck came to a halt when the differential lost its lubricant, causing the ring and pinion gears to overheat and melt together. The differential accommodated eight pounds or pints of grease, all of which had apparently escaped through a blownout pinion seal. According to plaintiffs' expert, Batterman, the lubricant probably escaped slowly over a period of "months," during which unusual noises in the rear end and "increased drag" would have been noticeable by the driver "for hundreds of miles" and would have become more pronounced as the remaining lubricant was expelled. The jury *112 could further have concluded that inspections of the vehicle, or of the garage floor under it, would have disclosed the leaking lubricant.
Plaintiffs further established that regulations of the Division of Motor Vehicles require self-inspection by the truck owner every three months and that the truck manufacturer's recommendation was that the differential lubricant level be inspected every six months or 6,000 miles. The differential leak would have been detected, according to Batterman, during any such inspections. However, the truck, which was purchased new in 1971 and was driven approximately 1200 miles a month, had not been regularly inspected, although Gordon and Wilson had received notification from both the Division of Motor Vehicles and the manufacturer of the inspection requirements and recommendations. Gordon and Wilson did have the truck serviced by a self-employed mechanic from time to time as need arose; the mechanic testified that the pinion seal had last been checked by him approximately six months before the accident, at which time it was in proper working order.
We conclude that the trial judge was correct in holding that the jury could not properly find "willful and wanton misconduct" from the proofs thus summarized. That term has recently been discussed in McLaughlin v. Rova Farms, Inc., 56 N.J. 288 (1970):
* * * it must appear that the defendant with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.

* * *
* * * willful and wanton misconduct signifies something less than an intention to hurt. To establish that condition it is not necessary that the defendant himself recognize his conduct as being extremely dangerous; it is enough that he know, or has reason to know, of circumstances which would bring home to the realization of the ordinary reasonable man the highly dangerous character of his conduct. [at 305, 306]
*113 Since "differences in the gravity of fault cannot be stated with mathematical precision," the focus must be on "the seriousness of the actor's misconduct." Ibid. Here the proofs at best show only that Gordon and Wilson Company failed to inspect its truck as recommended by the manufacturer and required by state regulations, and that the truck was operated for some time and distance with unusual noise and "drag." The record offers no suggestion that the failure to inspect was with knowledge of any condition of disrepair, or that the truck was driven with any recognition that it was in imminent danger of becoming disabled, or, indeed, that its condition was highly dangerous to others. Accordingly the proof cannot fairly be said to establish that defendants were "conscious * * * that injury will likely or probably result" or that they acted with "reckless indifference to the consequences." It is true, as argued by plaintiffs, that defendants could properly be (and presumably were) found to have acted volitionally and under circumstances where an unreasonable risk of harm to others was foreseeable. But such findings merely establish simple negligence (Rappaport v. Nichols, 31 N.J. 188, 201 (1959)); we find no peculiar "seriousness of the actor's misconduct" to justify calling it more than simple negligence. Cf. Mitzel v. Hauck, 78 S.D. 543, 105 N.W.2d 378 (Sup. Ct. 1960); Wakefield v. Singletary, 76 S.D. 417, 80 N.W.2d 84 (Sup. Ct. 1956).
In view of this conclusion it is unnecessary for us to pass upon plaintiffs' contention that the trial judge improperly denied as untimely their application to amend their complaint to allege wanton and willful misconduct.
Affirmed.